**2023 IL 126852**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 126852)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
SERVETUS BROWN, Appellant.

*Opinion filed February 17, 2023.*

CHIEF JUSTICE THEIS delivered the judgment of the court.

Justice Overstreet concurred in the judgment and opinion.

Justice Neville specially concurred, with opinion.

Justice O'Brien specially concurred, with opinion, joined by Justice Holder White.

Justices Cunningham and Rochford took no part in the decision.

### OPINION

¶ 1     At issue in this appeal is whether defendant Servetus Brown received ineffective assistance of trial counsel because, while he was present at trial for

*voir dire*, his attorney agreed to a process where the parties exercised juror challenges at sidebar conferences held off the record and outside his presence. The appellate court rejected this claim and affirmed his armed habitual criminal conviction. 2020 IL App (1st) 180826. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                                    BACKGROUND

¶ 3        On June 18, 2017, two police officers responded to a call of shots fired near 123rd Street and Yale Avenue in Chicago. When they arrived at the scene, they were directed by an individual to a parked black sedan, where defendant was sitting in the driver's seat. Defendant did not respond to the officers' repeated requests to exit the vehicle; therefore, the officers physically removed him from the sedan. One of the officers conducted a pat down search of defendant and recovered a loaded handgun from his pants pocket. Police also recovered from the driver's seat two packets of a suspected narcotic.

¶ 4        Defendant was indicted on multiple counts. The State proceeded to trial on only two counts: being an armed habitual criminal (720 ILCS 5/24-1.7(a)(2) (West 2016)) and possession of a controlled substance (*id.* § 402(c)).

¶ 5        In January 2018, a jury trial commenced in Cook County circuit court. Two attorneys appeared on defendant's behalf. The trial court questioned the venire members in panels of four. After questioning the first panel in open court, the trial judge asked to see the attorneys at a sidebar to discuss any objections they may have to the venire members. The court repeated this process and held a total of eight sidebars off the record before announcing that a jury had been selected. The trial judge then explained:

> "THE COURT: All right. We are back on the record and we're outside the presence of the jury. The State's present. The defense [is] present. The defendant is present. And in case I did not say it before, he's in civilian attire. And we just completed jury selection, and in the interest of saving a little bit of time, we had sidebars regarding the challenges for cause and for peremptory challenges and now we're going to put them all on the record. So the defense

struck as peremptory challenge number five, Rachel Stan, Michael Dzieuratkowski, and number 15, Joey Figueroa, is that correct?

[DEFENSE ATTORNEY]: That's correct.

THE COURT: And the State struck for peremptory number seven, Mr. Craig Allison, number nine, Susannne Conley Duran, and number 13, Erik Yessin, and also number 23, Barbara J. Hayler. And the State asked for cause as to Ishmael Henderson, actually it was by agreement, and also by agreement was Michael Gonzalez for failure to disclose a murder case. Is there anything else anyone wants to put on the record?

[THE STATE]: No.

[DEFENSE ATTORNEY]: No, Judge."

¶ 6        The jury found defendant guilty of being an armed habitual criminal but not guilty of possession of a controlled substance. In his motion for a new trial, defendant raised numerous contentions, but he did not challenge the sidebars conducted during the jury selection process. The trial court denied the motion for a new trial. Defendant was sentenced to 10 years in prison.

¶ 7        On appeal, defendant challenged his conviction on the basis that he was deprived of his constitutional right to be present at a critical stage of the proceeding, specifically jury selection. 2020 IL App (1st) 180826, ¶ 14. The appellate court recognized that defendant did not preserve this issue by objecting to the court's suggested process, or by raising it in a posttrial motion, and he did not argue plain error. *Id.* ¶ 15. Instead, he asserted that his defense counsel was ineffective for failing to object to the process where jurors were challenged at sidebars without defendant himself being present. *Id.* The court rejected defendant's ineffective assistance claim, finding that he had not shown prejudice because he failed to establish that he was not tried by an impartial jury. *Id.* ¶ 16. The appellate court affirmed defendant's armed habitual criminal conviction. *Id.* ¶ 21.

¶ 8        This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 9                                    ANALYSIS

¶ 10        The sole issue before us is whether defendant was denied the effective assistance of counsel because his attorney did not object to the trial court's suggestion that the parties exercise juror challenges at off-the-record sidebar conferences held in his absence. Defendant asserts that this procedure, which counsel agreed to, resulted in a violation of his constitutional right to be present at a critical stage of trial—namely jury selection. Defendant contends that his counsel performed deficiently by failing to object and protect that right.

¶ 11        To determine whether defendant was denied effective assistance of counsel, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *People v. Pingelton*, 2022 IL 127680, ¶ 53. To prevail on such a claim, a criminal defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial. *Strickland*, 466 U.S. at 687.

¶ 12        As this court has previously explained, "[t]he right to be present is not an express right under the United States Constitution, but is implied, arising from the due process clause of the fourteenth amendment." *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002) (citing U.S. Const., amend. XIV, § 1); *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *United States v. Gagnon*, 470 U.S. 522, 526 (1985). Similarly, article I, section 8, of the Illinois Constitution grants criminal defendants the express right "to appear and defend in person and by counsel." Ill. Const. 1970, art. I, § 8. "Accordingly, both the federal constitution and our state constitution afford criminal defendants the general right to be present, not only at trial, but at all critical stages of the proceedings, from arraignment to sentencing." *Lindsey*, 201 Ill. 2d at 55 (citing *Illinois v. Allen*, 397 U.S. 337, 338 (1970), *People v. Bull*, 185 Ill. 2d 179 (1998), *People v. Bean*, 137 Ill. 2d 65, 80-83 (1990), and *People v. Martine*, 106 Ill. 2d 429, 439 (1985)).

¶ 13        This court's decision in *Bean*, cited by both parties, is instructive. There, we recognized that a criminal defendant undeniably has a general right to be present at every stage of his trial, including jury selection. *Bean*, 137 Ill. 2d at 80. We further recognized that this court and the United States Supreme Court have limited the situations in which the denial of this broad right of presence constitutes a violation of the Illinois and United States Constitutions. *Id.*

¶ 14    The trial judge in *Bean* conducted in-chambers *voir dire* of six venire members. *Id.* at 79. The defendant's two attorneys were present during each *voir dire*, but the defendant was not present. *Id.* He claimed the *in camera* proceedings violated his right to be present during the entire jury selection process under both the Illinois and United States Constitutions. *Id.* at 78-79. The defendant failed to preserve his claim, and therefore this court reviewed it only for plain error. *Id.* at 80.

¶ 15    We explained in *Bean* that, although criminal defendants have a "general right to be present" at every stage of the trial, "the broad 'right to be present at trial' is not itself a substantial right under the Illinois Constitution." *Id.* at 80-81 (citing *Martine*, 106 Ill. 2d at 439). Rather, "it is a lesser right the observance of which is a means to securing the substantial rights of a defendant." *Id.* at 81. Therefore, we held that "a defendant is not denied a constitutional right every time he is not present during his trial, but only when his absence results in a denial of an underlying substantial right, in other words, a constitutional right; and it is only in such a case that plain error is committed." *Id.* Some of these substantial rights include the right to confront witnesses, the right to present a defense, and the right to an impartial jury. *Id.*

¶ 16    This court also recognized in *Bean* that, under the federal constitution, criminal defendants have a general right to be present at their trial. *Id.* at 82. This federal right of presence is not an express constitutional right but arises from the due process clause of the fourteenth amendment. *Id.* Consequently, "as long as a defendant's absence from a portion of his trial does not deprive him of due process, there is no violation of a defendant's derivative due process right of presence under the United States Constitution." *Id.* at 83.

¶ 17    In considering the specific claim raised by the defendant in *Bean*, this court concluded that no plain error occurred. *Id.* at 88. "[A]lthough defendant's broad right of presence was improperly denied and could have affected the impartiality of the jury, defendant's absence from the *in camera voir dire* did not, in fact, have the slightest effect on the impartiality of the jury selected." *Id.* at 81. The defendant did not even claim that his jury lacked impartiality. Instead, his argument was based upon the broad right of presence and the possibility that, if he had been present during the in chambers *voir dire*, he might have decided not to peremptorily challenge one of the venire members. *Id.*

- 5 -

¶ 18    Here, in support of his ineffective assistance claim, defendant seeks an expansion of our holding in *Bean* to provide a defendant with the same broad constitutional right to be present at the discussion of juror challenges as during *voir dire*. As he concedes, however, our appellate court has long held that a defendant's right to be present at all critical stages of the proceedings does not extend to the striking and accepting of jurors. See, *e.g.*, *People v. Spears*, 169 Ill. App. 3d 470 (1988); *People v. Beacham*, 189 Ill. App. 3d 483 (1989); *People v. Gentry*, 351 Ill. App. 3d 872 (2004).

¶ 19    In *Spears*, the defendant argued that he was denied his right to be present for jury selection when the trial court retired to chambers with counsel, outside his presence, to allow for the exercise of peremptory challenges. *Spears*, 169 Ill. App. 3d at 482. The appellate court rejected this argument and held:

> "There is no indication in the record that defendant was precluded from making suggestions to defense counsel during the court's questioning of the prospective jurors ***. *** [T]he communication by defense counsel to the court of the defense's specific objections regarding prospective jurors is not a critical stage of trial requiring defendant's presence. [Citation.] Further, the record in the instant case fails to indicate that defendant's interests or substantial rights were violated or that he was prejudiced in any way by his absence during the communications between the trial court and counsel regarding prospective jurors." (Emphasis added.) *Id.* at 483.

¶ 20    Similarly, in *Beacham*, after *voir dire* was conducted in open court, the attorneys retired to the judge's chambers to exercise challenges. *Beacham*, 189 Ill. App. 3d at 491. The defendant was present during the actual questioning of venire members and had an opportunity to consult with counsel regarding who should serve on the jury. He did not, however, accompany counsel into the judge's chambers, where the juror challenges were made. *Id.* According to the defendant, this process deprived him of his right to participate in the juror challenges because he was unaware of which jurors would be stricken for cause or peremptorily challenged by the State. *Id.* The *Beachem* court found "little merit" in this argument; the record established that the defendant was present during *voir dire* and was able to consult with his attorney before the exercise of the challenges in the judge's chambers. *Id.* at 491-92. Consequently, the court found that the

procedure employed by the trial court did not infringe upon his constitutional rights and that his participation in the jury selection process was not so limited as to deny him a fair trial. *Id.* at 492.

¶ 21        Thereafter, in *Gentry*, the appellate court held that the defendant was not deprived of his right to be present for jury selection where the prospective jurors were all questioned in his presence but challenges were made in his absence. *Gentry*, 351 Ill. App. 3d at 882-83. The *Gentry* court recognized the holdings of *Spears* and *Beachem* and specifically rejected the defendant's argument that Illinois courts had not resolved the issue of whether a defendant's right to be present applies during juror challenges. *Id.* at 883-84. The *Gentry* court recognized that no venire members had been questioned outside of the defendant's presence and nothing prevented him from conferring with his counsel on the composition of the jury. *Id.* at 884. The court explained:

> "Just because he was not present when the choices and arguments were actually communicated to the trial court, it does not follow that his 'participation in the jury selection was *** so limited as to deny him a fair trial.' Presumably, defense counsel took into account any 'input' from defendant when she acted on his behalf during the *in camera* meetings and sidebar conference." *Id.*

¶ 22        At odds with this extensive precedent is *People v. Oliver*, 2012 IL App (1st) 102531, cited by defendant. In *Oliver*, the trial court conducted *voir dire* in open court with the defendant present throughout, but the trial judge asked the State and defense counsel to come to discuss the juror challenges in chambers. *Id.* ¶ 5. The defendant later alleged in a postconviction petition that appellate counsel provided ineffective assistance when he failed to argue that his trial counsel was ineffective by improperly waiving, without his permission, his presence during the *in camera* conference, which he claimed was a critical stage of the trial. *Id.* ¶ 12.

¶ 23        In addressing the defendant's claim, the *Oliver* court held that "a defendant who has not waived or forfeited his right to be present [from a juror challenge conference] shows that the court has conducted a critical stage of the trial in the defendant's absence, [thus] the defendant has shown a violation of his constitutional rights." *Id.* ¶ 21. The court, however, affirmed the dismissal of his postconviction petition because the defendant had not even alleged that the

violation caused by the *in camera* discussion of juror challenges prejudiced him. *Id.* ¶ 23.

¶ 24    We find the rationale of *Spears*, *Beachem*, and *Gentry* convincing and consistent with our holding in *Bean*. To the extent that *Oliver* holds that a defendant has a constitutional right to be present for the exercise of juror challenges, it is hereby overruled. We therefore decline defendant's request to expand our holding in *Bean* regarding a defendant's constitutional right to be present during *voir dire* to include a defendant's presence at the striking and accepting of jurors.

¶ 25    The reason why these two stages of jury selection have long been viewed differently in Illinois is illustrated by what occurred in this case. Defendant was present throughout *voir dire* when prospective jurors were questioned. Thus, defendant had the opportunity to hear the prospective jurors' answers and to view their demeanor. He could then provide whatever input he desired to counsel before his attorney acted on his behalf at the sidebars. This circumstance is in stark contrast to *Bean*, where the defendant was not present during *voir dire* and therefore could not provide this input to counsel. To be clear, that is not to say that, if a defendant requests to be present at a conference where juror challenges are made, that his presence should be denied without the trial court providing a justification for the exercise of such discretion.

¶ 26    Concerning defendant's ineffective assistance claim, it is well established that, upon review, counsel's performance is measured by "an objective standard of competence under prevailing professional norms." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). A court must determine whether, considering all the circumstances, counsel's identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. *Strickland* instructs that a court should "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

¶ 27    Here, defendant was present in the courtroom throughout the trial, including for all the questioning of the venire members. The record shows only that during *voir dire* the trial court requested to see the attorneys at sidebars and, during those discussions, each side presented any challenges it had to venire members. The record is silent as to whether defendant talked with counsel about individual venire

- 8 -

members prior to the sidebars. However, in the absence of any evidence that counsel failed to represent defendant's interests at the sidebars, there is no basis for us to conclude that counsel somehow rendered deficient performance by failing to object to the trial court's suggested procedure. As the State acknowledges, to the extent that defendant has evidence of counsel's acts or omissions not found in the record to rebut the presumption that his attorney rendered adequate assistance, he can still raise such a claim in a postconviction petition. See *People v. Bew*, 228 Ill. 2d 122, 135 (2008).

¶ 28        Finally, while defendant concedes that there is no evidence in the record that he was tried by a biased jury, he argues that this court should presume prejudice. Defendant claims that, because the juror strikes occurred off the record and counsel did not insist on a court reporter for the sidebars, he was prevented from having an adequate record on appeal to raise any possible issue surrounding the sidebars. We have already found that defendant has not shown his counsel provided objectively unreasonable assistance, and thus, we need not specifically address his claim that prejudice should somehow be presumed due to his attorney's decision not to have a court reporter transcribe the sidebars in this case. See *id.* at 135-36 (holding that claims of ineffective assistance of counsel require a showing of actual prejudice, not mere speculation of prejudice).

¶ 29                                    CONCLUSION

¶ 30        Accordingly, for the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 31        Affirmed.

¶ 32        JUSTICE NEVILLE, specially concurring:

¶ 33        I concur in the lead opinion's holding that Brown has not shown he received ineffective assistance of counsel. I write separately because I disagree with the court's reasoning and the holding that hearings to exercise challenges to jurors do not constitute a critical stage of a trial. I would find that Brown had a constitutional

right to be present for the conferences when his attorney and the prosecutor exercised their challenges.

¶ 34                     A. Constitutional Right to Be Present

¶ 35     The United States Supreme Court has held that a defendant has a right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." (Internal quotation marks omitted.) *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Federal courts inferred the right to presence from the confrontation clause of the sixth amendment and the due process clause of the fourteenth amendment. U.S. Const., amends. VI, XIV, § 1; *United States v. Gagnon*, 470 U.S. 522, 526 (1985). Because the federal right to presence derives from the confrontation and due process clauses, it applies only when the defendant's absence affects his right to due process and his right to confront witnesses. *Stincer*, 482 U.S. at 745; *Gagnon*, 470 U.S. at 526; *People v. Bean*, 137 Ill. 2d 65, 83 (1990).

¶ 36     The Illinois Constitution explicitly grants criminal defendants the "right to appear and defend in person and by counsel." Ill. Const. 1970, art. I, § 8; *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002). But not all proceedings on criminal charges held without the defendant violate the defendant's constitutional right to appear and defend in person. *Bean*, 137 Ill. 2d at 81. The Illinois Constitution, like the federal constitution, does not guarantee the right to presence when the defendant's presence "would be useless, or the benefit but a shadow." (Internal quotation marks omitted.) *People v. Lofto*n, 194 Ill. 2d 40, 67 (2000). The Illinois Constitution entitles defendant to be present "to the extent that a fair and just hearing would be thwarted by his absence." (Internal quotation marks omitted.) *Id.*

¶ 37     Under both the United States and Illinois Constitutions, a defendant has a right to be present at every critical stage of his criminal proceedings, *i.e.*, "any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Stincer*, 482 U.S. at 745; *Lindsey*, 201 Ill. 2d at 55; *Lofton*, 194 Ill. 2d at 67.

¶ 38                    1. Courts Split on Whether Jury Challenges
                                Are a Critical Stage

¶ 39        In *Lewis v. United States*, 146 U.S. 370 (1892), the United States Supreme
Court reversed a murder conviction because the trial court did not permit the
defendant to see the prospective jurors before the defense made its challenges to
the prospective jurors. The *Lewis* court said, "making of challenges was an essential
part of the trial, and *** it was one of the substantial rights of the prisoner to be
brought face to face with the jurors at the time when the challenges were made."
*Id.* at 376. Similarly, in *Hopt v. Utah*, 110 U.S. 574, 578 (1884), the court held:

> "[The defendant's] life or liberty may depend upon the aid which, by his
> personal presence, he may give to counsel and to the court and triers, in the
> selection of jurors. The necessities of the defence may not be met by the
> presence of his counsel only. For every purpose, therefore, involved in the
> requirement that the defendant shall be personally present at the trial, where the
> indictment is for a felony, the trial commences at least from the time when the
> work of empanelling the jury begins."

¶ 40        Courts have not treated *Lewis* and *Hopt* as resolving the issue of whether the
defendant's right to presence extends to the actual exercise of jury challenges,
which often occurs in sidebars in court or, as in this case, in chambers. Courts of
various jurisdictions have reached inconsistent conclusions on the issue of whether
jury challenges count as a critical stage of proceedings.

¶ 41        In *Cohen v. Senkowski*, 290 F.3d 485, 490 (2d Cir. 2002), the court held
defendant "did not have a constitutional right to be present during the juror
challenges conducted in *** chambers." In *Tatum v. United States*, 330 A.2d 522,
524 (D.C. App. 1974), the court said, "The actual exercise of peremptory challenges
properly is a matter to be handled by counsel, and *** all such challenges shall be
made at the bench. Certainly there is no requirement that a defendant be among
those participating in any bench conference ***." (Internal quotation marks
omitted.) In *Montgomery v. State*, 461 S.W.2d 844, 847 (Mo. 1971), with similar
facts and issues, the court came to the same conclusion.

¶ 42        But in *City of Mandan v. Baer*, 1998 ND 101, ¶ 18, 578 N.W.2d 559, the court
held the defendant had a right to presence during the exercise of jury challenges.

Then in *Coney v. State*, 653 So. 2d 1009, 1013 (Fla. 1995), the court held that the denial of the defendant's constitutional right to presence for jury challenges amounted to harmless error. See generally Jay M. Zitter, Annotation, *Validity of Jury Selection as Affected by Accused's Absence From Conducting of Procedures for Selection and Impaneling of Final Jury Panel for Specific Case*, 33 A.L.R.4th 429 (2023).

¶ 43　　The Illinois Appellate Court in *People v. Spears*, 169 Ill. App. 3d 470 (1988), held that the trial court in that case had not violated the defendant's right to appear and defend in person when the court permitted the attorneys, in chambers without the defendant, to exercise their peremptory challenges. The *Spears* court emphasized:

> "Defense counsel indicated that before proceeding into chambers, she and counsel for the prosecution, in the presence of defendant, discussed the prospective jurors. *** [D]efendant expressed his views toward a particular juror ***. Defense counsel stated that she remembered asking defendant several other times whether he had any comments regarding any other prospective juror. ***
>
> *** [T]he record in the instant case fails to indicate that defendant's interests or substantial rights were violated or that he was prejudiced in any way by his absence during the communications between the trial court and counsel regarding prospective jurors. [Citation.] Rather, the record shows that defendant was able to communicate with counsel during jury selection and that defendant's comments were carefully considered by defense counsel and communicated to the court." *Id.* at 482-83.

The *Spears* court would have found a violation of the defendant's right to appear and defend if he had been unable to communicate with his attorney:

> "We note that under different circumstances, such as where a defendant was unable to communicate to counsel or the court his comments regarding prospective jurors, the defendant's right to be present at a critical stage of trial would be violated. Such a procedure would result in reversible error entitling the defendant to a new trial. In the instant case, however, defendant's right to be present was protected." *Id.* at 483.

¶ 44 Federal cases finding the defendant's right to presence sufficiently protected similarly rely on evidence that the trial courts afforded each defendant an "opportunity to consult with his attorney before his attorney submitted the peremptory challenges" (*United States v. Curtis*, 635 F.3d 704, 716 (5th Cir. 2011); see *United States v. Reyes*, 764 F.3d 1184, 1191-92 (9th Cir. 2014); *United States v. Gayles*, 1 F.3d 735, 738 (8th Cir. 1993)), and the defendant was "present when the peremptory challenges were given formal effect" (*Curtis*, 635 F.3d at 716), allowing the defendant to express any misgivings at the time the court impaneled the jury. See *United States v. Chrisco*, 493 F.2d 232, 236 (8th Cir. 1974).

¶ 45 The court in *United States v. Gibbs*, 182 F.3d 408, 438 (6th Cir. 1999), said:

"The absence of the defendants from the peremptory challenge conference may sometimes constitute reversible error because courts have recognized that defendants can often be helpful in noticing or pointing out things about certain jurors that their lawyers might not or could not see. [Citations.] This process is important to ensuring an impartial jury. However, under the plain error standard, the defendants must make a specific showing of prejudice to warrant reversal of a conviction. [Citation.] Here, although the defendants were not present when the peremptory challenges were actually made, they were present during most of the voir dire, and they had the opportunity to speak with their attorneys with respect to the section of the voir dire they did not attend. Therefore, each defendant had the opportunity to discuss with counsel and to inform the district judge concerning any prospective juror, and counsel met with the judge to exercise the challenges. We hold that the defendants have failed to make a specific showing of prejudice resulting from this error."

¶ 46 *Spears* and *Gibbs* find no cause for reversal because the record in those cases did not show prejudice. *Spears*, 169 Ill. App. 3d at 483; *Gibbs*, 182 F.3d at 438. "[P]rejudice is the central inquiry in a harmless error inquiry." (Internal quotation marks omitted.) *People v. Little*, 2021 IL App (1st) 191108, ¶ 39. The reasoning of *Spears*, like the reasoning of *Gibbs*, *Curtis*, and *Chrisco*, effectively subjects the right to presence to harmless error analysis. See *People v. Baez*, 241 Ill. 2d 44, 105 (2011) (harmless error review depends on a showing of prejudice); *Henderson v. United States*, 419 F.2d 1277, 1278 (5th Cir. 1970) (*per curiam*) (exclusion of defendant from part of jury impaneling amounted to harmless error).

¶ 47    Thus, some cases, like *Cohen*, 290 F.3d at 490, categorically hold that the defendant has no right to presence when the attorneys actually exercise their jury challenges. Some cases, like *Baer*, 1998 ND 101, ¶ 18, hold categorically that the defendant has a constitutional right to presence when the attorneys exercise their challenges. And other cases, like *Spears*, 169 Ill. App. 3d 470, and *Gibbs*, 182 F.3d 408, hold that the defendants' absence when the attorneys actually exercise their jury challenges might violate the constitution, depending on the circumstances.

¶ 48    Often, when cases conflict, "[t]he orderly administration of justice dictates that a clear rule *** be distilled." *Nelson v. Araiza*, 69 Ill. 2d 534, 543 (1978). Cases like *Curtis*, holding that the court did not violate the defendant's constitutional rights because it allowed him sufficient opportunity to consult with his attorney and object to the removal of venire members from the jury, leave the trial court to guess whether its procedures sufficiently protected the defendant's rights. *Spears* and *Gibbs* do not establish a clear, simple rule. Instead, they discuss at length the kinds of circumstances the court must consider to determine whether the failure to conduct jury challenges in the defendant's presence violates his constitutional rights.

¶ 49                    2. Jury Challenges Form a Critical Stage of the Trial

¶ 50    I find persuasive the cases from several jurisdictions that count the exercise of jury challenges as a critical stage of the trial. The cases use comparable formulations of the basic principles. The United States Court of Appeals for the Fifth Circuit summarily held, "the exercise of peremptory challenges is a critical stage of the *voir dire* process." *United States v. Alikpo*, 944 F.2d 206, 210 (5th Cir. 1991). The Supreme Court of Georgia said, "[p]roceedings at which the jury composition is selected or changed are a critical stage at which the defendant is entitled to be present." *Sammons v. State*, 612 S.E.2d 785, 788 (Ga. 2005). The Supreme Court of Mississippi elaborated:

"[A] criminal defendant is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure. We find that a defendant's presence at the peremptory challenges stage would contribute to the fairness of the procedure. The trial judge recognized that [the defendant] had a right to be at

- 14 -

the peremptory challenges and so does this Court." (Internal quotation marks omitted.) *Hughes v. State*, 2000-KA-01366-SCT (¶10) (Miss. 2001).

¶ 51 In *State v. Slert*, 383 P.3d 466, 468 (Wash. 2016), the judge, prosecutor, and defense counsel, without Slert and without a court reporter, discussed in chambers whether venire members had shown bias. The court then dismissed four venire members on the record in open court. *Id.* The Supreme Court of Washington held, "The criminal defendant's right to be present is rooted in *** the due process clauses of the state and federal constitutions ***. *** Slert had a right to be present during the discussion of the potential bias of these jurors." *Id.* at 469-70.

¶ 52 In *State v. Garcia*, 1980-NMSC-132, ¶ 8, 95 N.M. 246, 620 P.2d 1271, the trial judge excluded Garcia from chambers when the parties exercised their challenges to venire members. The New Mexico Supreme Court said: "Each time the State strikes a juror, the lawyer *and his client* may need to make judgments as to priorities of challenges to the remaining jurors. The trial court erred in denying Garcia the right to be present when challenges to the jury were made." (Emphasis in original.) *Id.* ¶¶ 16-17.

¶ 53 An Arizona court held: "[T]he exercise of peremptory challenges *** is a critical stage of the proceeding at which he has the right to be present. We believe the defendant's presence has a reasonably substantial relationship to the fullness of the opportunity to defend." *State v. Collins*, 648 P.2d 135, 138 (Ariz. Ct. App. 1982).

¶ 54 Under the rule recognized in *Sammons*, *Alikpo*, *Hughes*, *Slert*, *Garcia*, and *Collins*, trial courts know that, if they exclude the defendant from proceedings during which defense counsel and prosecutors challenge jurors for cause and exercise peremptory challenges, when the defendant has not waived the right to participate, the court has violated the defendant's constitutional right to appear and defend in person. I would hold the defendant's constitutional right to appear and defend in person includes the right to presence when the attorneys and the court discuss challenges to venire members and when the attorneys exercise peremptory challenges. I would overrule *Spears* and cases following *Spears* (*e.g.*, *People v. Gentry*, 351 Ill. App. 3d 872 (2004), and *People v. Beachem*, 189 Ill. App. 3d 483 (1989)) to the extent those cases hold that a criminal defendant has no right to presence for jury challenges as long as the defendant had an adequate opportunity

- 15 -

to communicate with counsel during other parts of jury selection.

¶ 55                    B. Violation of Right to Presence Is Not a Structural Error

¶ 56    Brown argues that the violation of his constitutional right to presence during the exercise of jury challenges constitutes a structural error requiring reversal without any showing of prejudice. I disagree. Courts from several jurisdictions have persuasively held the violation of the right to presence for jury challenges "was not of such dimension as to undermine the integrity of the trial and require automatic reversal." *United States v. Feliciano*, 223 F.3d 102, 112 (2d Cir. 2000). The constitutional right to presence for jury challenges "is not a structural right whose violation constitutes *per se* error." *Commonwealth v. Hunsberger*, 58 A.3d 32, 39 (Pa. 2012). Like the federal courts, I would "consider the nature of a presence error in the context of the specific proceeding from which the defendant was excluded. In the usual case, such an error will be susceptible to harmless error analysis." (Internal quotation marks omitted.) *Yarborough v. Keane*, 101 F.3d 894, 898 (2d Cir. 1996); see also *United States v. Thomas*, 724 F.3d 632, 641 (5th Cir. 2013). *Spears*, *Beacham*, and *Gentry* all based their rulings on considerations appropriate for harmless error review. Although I would overrule those cases in part, I express no opinion on whether the courts in those cases reached the correct results.

¶ 57                    1. Review of Preserved and Unpreserved Presence Errors

¶ 58    Our decision in *People v. McLaurin*, 235 Ill. 2d 478 (2009), explains how courts of appeal should address the presence issue when the defendant objects and preserves the issue for review and when the issue is unpreserved because the defendant fails to object. McLaurin failed to preserve for review an issue concerning his exclusion from discussions about how to respond to notes from the jury. *Id.* at 485. McLaurin, citing *People v. Childs*, 159 Ill. 2d 217 (1994), argued the State did not meet its burden of proving beyond a reasonable doubt that the court's error caused no harm. *McLaurin*, 235 Ill. 2d at 494. This court responded:

"[McLaurin's] argument ignores the crucial difference between an error a defendant has properly preserved for review and one which the defendant has forfeited. *** [W]here the defendant has made a timely objection and properly

- 16 -

preserved an error for review, the reviewing court conducts a harmless-error analysis in which the State has the burden of persuasion with respect to prejudice. [Citation.] However, where the defendant fails to make a timely objection and therefore forfeits review, the reviewing court will examine the record only for plain error. In a plain-error review, the burden of persuasion remains on the defendant. [Citation.] *** [The defendant in *Childs*] properly preserved [his] claims for review, and this court applied a harmless-error analysis, placing the burden on the State. As we have discussed, however, defendant in the present case did not properly preserve his objections. Because he has forfeited his claims, we review them only for plain error, and the burden of persuasion remains on defendant to show prejudice." *Id.* at 495-96.

¶ 59    Therefore,

"when a defendant who has not waived or forfeited his right to be present shows that the court has conducted a critical stage of the trial in the defendant's absence, the defendant has shown a violation of his constitutional rights. If he properly preserves the issue for review, the State must prove the violation harmless beyond a reasonable doubt. [Citation.] The *Bean* analysis, placing the burden on the defendant to further show prejudice due to the violation of his constitutional right to presence at trial, applies only when the defendant has failed to preserve the issue for review, so that the defendant must prove that the constitutional error amounted to plain error." *People v. Oliver*, 2012 IL App (1st) 102531, ¶ 21.

¶ 60                    2. Review of Brown's Unpreserved Error

¶ 61    Here, because Brown failed to make a timely objection and therefore forfeits review, this court examines his unpreserved presence issue for plain error. But Brown concedes that he cannot show prejudice due to his exclusion from the conference in chambers at which defense counsel and the prosecutor challenged jurors for cause and exercised their peremptory challenges. Accordingly, because Brown has the burden and cannot show prejudice, I agree with the lead opinion that Brown has not shown plain error and therefore the trial court's decision to exclude Brown from the sidebars does not warrant reversal here.

- 17 -

¶ 62                           C. Ineffective Assistance of Counsel

¶ 63        Brown contends his attorneys provided ineffective assistance by failing to object to the trial court's jury selection sidebars held without Brown and without a court reporter. We review *de novo* the issue of whether Brown received ineffective assistance of counsel. *People v. Hale*, 2013 IL 113140, ¶ 15.

¶ 64        Both the United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687.

¶ 65        " 'Surmounting *Strickland*'s high bar is never an easy task' [citation], and a defendant's failure to make the required showing of either deficient performance or sufficient prejudice will defeat a claim that counsel was ineffective [citations]." *People v. Johnson*, 2021 IL 126291, ¶ 53. *Strickland* teaches us that courts strongly presume counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

¶ 66        Brown has not overcome the presumption of adequate assistance. The appellate court in *Beacham*, 189 Ill. App. 3d at 492, said "peremptory challenges may be exercised outside the presence of the defendant as long as the defendant is given the opportunity to confer with counsel beforehand." See also *Gentry*, 351 Ill. App. 3d 872. When defense counsel decided not to object to the trial court's procedure, *Gentry*, *Beacham*, and *Spears* appeared to state binding law. Defense counsel exercised reasonable professional judgment when she decided not to object to the exercise of peremptory challenges and challenges for cause at a conference in chambers held without Brown.

¶ 67        I would also find counsel's decision not to demand a court reporter for the conferences in chambers does not show ineffective assistance of counsel. Illinois Supreme Court Rule 608(a)(7) (eff. July 1, 2017) provides, in pertinent part, that "the court reporting personnel *** shall take the record of the proceedings regarding the selection of the jury, but the record need not be transcribed unless a

- 18 -

party designates that such proceedings be included in the record on appeal." The appellate court interpreted Rule 608(a) in *People v. Davis*, 405 Ill. App. 3d 585 (2010). Davis's attorney did not object when the court held sidebar conferences, including sidebars during *voir dire*, without a court reporter. *Id.* at 598. Davis raised the issue in a motion for new trial, which the trial court denied. *Id.* at 600. The appellate court summarized the trial court's reasoning:

> "[T]he court explained that having the court reporter move equipment back and forth for sidebars takes significant time. As a result, the court's policy was to have the sidebars proceed in the absence of the court reporter and then, once the jury has left the room, spread of record what had occurred. We observe that neither trial counsel nor appellate counsel has disputed Judge Linn's representation regarding the reason for the policy or suggested that trial counsel was unaware of the policy. Thus, pursuant to the court's policy, defendant was entitled to make a clear record of any prior objections or motions that ensued. ***
>
> ***
>
> *** [D]efendant is not entitled to a new trial, although we believe the better approach is to have the court reporter transcribe sidebar discussions." *Id.* at 600-01.

¶ 68    In light of *Davis*, I cannot say defense counsel acted objectively unreasonably by failing to object to sidebars held without a court reporter. On this issue, too, I would find that Brown has not shown he received ineffective assistance of counsel.

¶ 69                    D. Right to Appeal

¶ 70    Next, Brown contends that his attorney's acquiescence to the court's decision to hold the jury selection sidebars off the record and without him prevented him from having a sufficient record of jury selection, depriving him of his constitutional right to appeal issues of jury selection. Article VI, section 6, of the Illinois Constitution provides, "[a]ppeals from final judgments of a Circuit Court are a matter of right to the Appellate Court." Ill. Const. 1970, art. VI, § 6. The Illinois Constitution does not require counsel to preserve for appellate review every

conceivable issue. See *People v. Simms*, 192 Ill. 2d 348, 362-64 (2000). Under *Spears* and *Davis*, trial counsel could have reasonably believed objecting to the trial court's preferred method for exercising peremptory challenges would not have benefited Brown. Defense counsel and the trial court adequately protected Brown's right to appeal, even though defense counsel did not preserve for review issues concerning a violation of his right to presence for the exercise of jury challenges.

¶ 71                                    E. Collateral Appeal

¶ 72        Brown also claims that his inability to show prejudice renders his ineffective assistance claim unreviewable on collateral appeal. A defendant may collaterally attack a conviction under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)), which provides a remedy for substantial violations of a criminal defendant's federal or state constitutional rights. *Simms*, 192 Ill. 2d at 359. This court does not render advisory opinions. *People v. Brown*, 236 Ill. 2d 175, 195 (2010). As the record does not include a postconviction petition, I have no opinion concerning the issues he might raise in such a petition.

¶ 73                                       F. Conclusion

¶ 74        I would find that criminal defendants have a constitutional right to be present at all critical stages of the proceedings against them, including the challenges, both peremptory and for cause, to prospective jury members. When a defendant fails to object and preserve his presence error, we review for plain error, and the defendant has the burden of proving prejudice. But when the defendant objects and preserves the error, the burden shifts to the State to prove the error is harmless beyond a reasonable doubt. Because Brown's counsel did not preserve the presence issue for review, Brown bears the burden of showing the error prejudicial. He admits he cannot meet this burden. He also did not show his counsel provided objectively unreasonable assistance by failing to object to the trial court's proceedings for the jury challenges. Accordingly, while I depart from the lead opinion's reasoning and the holding that hearings to exercise juror challenges are not a critical stage of the trial, I concur in this court's judgment affirming the judgment of the appellate court, which affirmed the trial court's judgment that Brown has not shown he received

ineffective assistance of counsel.

¶ 75        JUSTICE O'BRIEN, specially concurring:

¶ 76        I agree with the lead opinion's disposition affirming the appellate court's judgment but disagree with the lead opinion's reasoning. The lead opinion segregates the jury selection process into two distinct stages: (a) the questioning of prospective jurors, which the lead opinion defines as "*voir dire*," and (b) the subsequent "striking and accepting of jurors" after the conclusion of *voir dire*. *Supra* ¶ 18. The lead opinion then expressly holds that a defendant does not have a right to be present during the latter stage. *Supra* ¶ 24. In reaching this conclusion, the lead opinion creates a new bright-line/*per se* rule that would render any analysis of prejudice unnecessary. However, after announcing this new bright-line/*per se* rule, the lead opinion proceeds to review whether the record shows any evidence that counsel failed to represent defendant's interests during the striking and accepting of jurors. Ultimately, the lead opinion concludes that, in the absence of any such evidence, "there is no basis for us to conclude that counsel somehow rendered deficient performance by failing to object to the trial court's suggested procedure" of conducting the striking and accepting of jurors off the record and outside the presence of defendant. *Supra* ¶ 27.

¶ 77        I believe the lead opinion is incorrect in holding that a defendant does not have the right to be present during the striking and accepting of jurors. Such a holding deviates from this court's underlying reasoning in *People v. Bean*, 137 Ill. 2d 65 (1990). Moreover, the lead opinion's analysis conflates the two ineffective assistance prongs: (1) deficient performance and (2) prejudice. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Therefore, I write separately because I believe counsel rendered deficient performance when she agreed to a procedure that resulted in defendant being deprived of his broad right to be present during a critical stage of his trial—the striking and accepting of jurors. Despite finding that counsel rendered deficient performance, I would affirm the appellate court's judgment on the basis of defendant's concession that he is unable to establish prejudice here on direct appeal.

¶ 78        I begin by noting the basis for the lead opinion's holding—the rationale espoused in *People v. Spears*, 169 Ill. App. 3d 470 (1988), *People v. Beacham*, 189

Ill. App. 3d 483 (1989), and *People v. Gentry*, 351 Ill. App. 3d 872 (2004). Relying on the rationale of *Spears*, *Beacham*, and *Gentry*, the lead opinion "decline[s] defendant's request to expand our holding in *Bean* regarding a defendant's constitutional right to be present during *voir dire* to include a defendant's presence at the striking and accepting of jurors." *Supra* ¶ 24. I find the lead opinion's holding to not only be inconsistent with the reasoning underlying *Bean* but also far too broad when viewed within the context of the specific facts and analysis found in *Spears*, *Beacham*, and *Gentry*. The lead opinion's holding in essence creates a bright-line/*per se* rule that will result in the immediate foreclosure of any claim a future defendant may have regarding his or her lack of presence at the striking and accepting phase of jury selection. I do not read *Bean*, *Spears*, *Beacham*, or *Gentry* to support such a conclusion. Moreover, if the creation of a bright-line/*per se* rule is what the lead opinion intends to hold, the analysis should end there. By discussing that defendant failed to present "evidence" establishing that counsel did not represent defendant's interests, the lead opinion conflates the two ineffective assistance prongs. Specifically, the lead opinion states: "However, in the absence of any evidence that counsel failed to represent defendant's interests at the sidebars, there is no basis for us to conclude that counsel somehow rendered deficient performance by failing to object to the trial court's suggested procedure." *Supra* ¶ 27. This portion of the lead opinion's analysis is a prejudice-type analysis and therefore prompts the question—why would a court conduct a prejudice analysis if the defendant has no right to be present at this stage of the trial? With this question in mind, it is important to clarify the precise question before this court. The question is not whether counsel was ineffective for failing to convey defendant's interests at the sidebar conferences. Since defendant was absent from the conferences and the conferences were held off the record, how would defendant know whether his interests were or were not protected? Instead, the precise question before this court is whether counsel was ineffective in agreeing to a procedure whereby the striking and accepting of jurors were conducted off the record and outside the presence of defendant.

¶ 79        Turning to the lead opinion's cited authority, this court, in *Bean*, explained that "a criminal defendant has a general right to be present at every stage of his trial, including jury selection." *Bean*, 137 Ill. 2d at 80. The court also expressly held: "Jury selection is a critical stage of trial." *Id.* at 84. In *Bean*, the defendant claimed that the trial court violated his constitutional rights when it excluded the defendant

from *in camera voir dire* of six members of the venire. *Id.* at 79. Specifically, the six venire members were each brought back into the judge's chambers for further questioning, questioning from which the defendant was absent. *Id.* Defense counsel, without consulting the defendant, used a peremptory challenge to excuse one of the venire members from the jury. *Id.* at 79-80. Four of the six venire members were excused for cause. None of the venire members interviewed in chambers served on the jury. *Id.*

¶ 80    The *Bean* court found that the exclusion of the defendant from the *voir dire* of these six venire members was "improper." *Id.* at 81, 88. However, the court ultimately concluded that the defendant was not entitled to relief under the doctrine of plain error since the defendant failed to establish that the improper procedure resulted in a jury that was not impartial. *Id.* at 81. Specifically, the court stated: "We conclude that no plain error occurred because, although defendant's broad right of presence was improperly denied and could have affected the impartiality of the jury, defendant's absence from the *in camera voir dire* did not, in fact, have the slightest effect on the impartiality of the jury selected." *Id.* The court proceeded to also conclude that, while the defendant's due process rights under the federal constitution were not violated, there could be future scenarios where exclusion from *voir dire* results in a new trial. *Id.* at 88. Specifically, the court stated:

> "Although we agree with defendant's exposition of why he should have been present throughout jury selection, defendant's argument does not establish an absolute, inviolable right of presence, which if applied to the present case would require a new trial even though defendant's presence at the *in camera voir dire* could not have affected the judge's excusal of four venire members, and even though defendant has not shown that his absence resulted in a prejudiced juror serving on his jury. Yet while we hold that defendant's due process right of presence was not violated in this case, we note that the procedure of *in camera voir dire* without defendant's presence and without defendant's express waiver of this right is improper and, in some cases, will inevitably result in the denial of a defendant's fundamental rights to a fair trial by an impartial jury." *Id.*

¶ 81    Significantly, the *Bean* court used the term "improper" on multiple occasions when referencing the defendant's exclusion from *in camera voir dire* of six

- 23 -

members of the venire. It was only after the court reviewed the specific facts of the case that it determined that the impropriety did not affect the impartiality of the jury. While the questions before the *Bean* court involved plain error and due process, not ineffective assistance, it stands to reason that an attorney's performance is in fact deficient if she fails to ensure (1) her client is present for *voir dire* or (2) her client expressly waives the right to be present for *voir dire*. Again, such a conclusion is compelled by the *Bean* court's multiple impropriety findings and its express acknowledgement that *voir dire* without a defendant's presence will, at some point, inevitably result in *plain* error and/or the deprivation of a defendant's fundamental right to a fair trial in the future. It follows therefore that, if *voir dire* is a critical part of a criminal proceeding and a defendant has the right to be present at all critical stages of the proceedings, counsel's failure to ensure a defendant's presence at such a critical stage falls below an objective standard of reasonableness. See *Strickland*, 466 U.S. at 687; *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989) (the first prong of the ineffective assistance test requires a defendant to prove his counsel's performance fell below an objectively reasonable standard).

¶ 82 The lead opinion attempts to limit the holding in *Bean* on the basis that defendant, unlike the defendant in *Bean*, was present for the questioning of the venire panels. Specifically, the lead opinion states, "Defendant was present throughout *voir dire* when prospective jurors were questioned. Thus, defendant had the opportunity to hear the prospective jurors' answers and to view their demeanor. He could then provide whatever input he desired to counsel before his attorney acted on his behalf at the sidebars." *Supra* ¶ 25. This reasoning and assumption are flawed for several reasons.

¶ 83 At the outset, I do not disagree with the lead opinion's assertion that the term "*voir dire*" refers to the questioning of potential jurors and does not technically include the striking or accepting of jurors. However, this assertion is not relevant to, nor dispositive of, the issue before this court. The lead opinion wants to separate the process of *voir dire* from the striking and accepting of jurors and then wants to exclude the latter from the jury selection process. Jury selection, however, is made up of several stages and components, all of which rely upon one another to ensure that the defendant is adjudicated by an impartial jury. The striking and accepting of jurors is an integral part of the jury selection process. It is, in fact, the culminating

phase to which all other phases lead. The notion that a defendant would have a broad right to be present during the questioning of jurors, but not the striking and accepting of jurors, defies logic. Simply put, the questioning of jurors falls under the umbrella of jury selection. The striking of jurors falls under the umbrella of jury selection. The accepting of jurors falls under the umbrella of jury selection. And "[j]ury selection is a critical stage of trial." *Bean*, 137 Ill. 2d at 84. At best, a defendant's presence at one stage of jury selection and not another *may* be relevant to the question of prejudice or whether a defendant is entitled to relief under the doctrine of plain error, but it is not relevant to the question of whether counsel's performance was deficient. Absent the defendant's knowing and voluntary waiver, I can conceive of no possible strategic advantage that might have been gained by conducting the questioning of jurors in the presence of defendant and then subsequently agreeing to a procedure whereby the striking and accepting of jurors is conducted off the record and outside the presence of defendant.

¶ 84 Second, in an apparent attempt to excuse counsel's deficiencies, the lead opinion simply assumes that defendant "provide[d] whatever input he desired to counsel before his attorney acted on his behalf at the sidebars." *Supra* ¶ 25. Again, this type of analysis implicates the second *Strickland* prong—whether defendant was prejudiced by counsel's deficient performance—not whether counsel's performance was in fact deficient. Furthermore, the reasoning itself is logically flawed, since it fails to acknowledge that the striking and accepting of jurors involves counsel from *both* sides—the defense and the State. While defendant may have been able to tell his counsel that he would like her to strike prospective jurors *A* and *B*, the lead opinion's reasoning does not account for who the State may wish to strike.

¶ 85 Finally, the lead opinion's reasoning incorrectly focuses on the conduct of defendant, as opposed to counsel. The specific claim before this court is ineffective assistance of counsel. Accordingly, it is counsel's conduct, not defendant's conduct, that we are called to objectively analyze. Here, counsel agreed to a process that infringed on defendant's broad right of presence. Did counsel's agreement to this process constitute deficient performance? That is the sole question on review when analyzing the first prong of *Strickland*. I answer this question in the affirmative. Again, the assumption that defendant could "provide whatever input he desired to counsel before his attorney acted on his behalf at the sidebars" goes

to the question of prejudice, not whether counsel was deficient. Of particular concern is the fact that the lead opinion's above assumption will result in future confusion regarding the respective duties of the advocate and the client. For example, the lead opinion in essence places the obligation on a defendant to act prior to a sidebar or hearing, thereby shifting the burden of advocacy and representation from counsel to defendant. Alternatively, I believe it is counsel's obligation to ensure her client is present at all stages of jury selection, not defendant's obligation to inform counsel of his wishes and concerns prior to certain stages of jury selection. Simply put, counsel was deficient in agreeing to a process where the parties struck and accepted jurors at sidebar conferences held off the record and outside defendant's presence.

¶ 86    In rejecting this conclusion, the lead opinion relies upon the rationale of *Spears*, 169 Ill. App. 3d 470, *Beacham*, 189 Ill. App. 3d 483, and *Gentry*, 351 Ill. App. 3d 872. Specifically, the lead opinion finds these cases "convincing and consistent with our holding in *Bean*." *Supra* ¶ 24. I will examine each case in turn. I will also examine the decision in *People v. Oliver*, 2012 IL App (1st) 102531, which the lead opinion finds to be "[a]t odds" with *Spears*, *Beacham*, and *Gentry*. *Supra* ¶ 22.

¶ 87    While the *Spears* court was not asked to review a claim of ineffective assistance, it did find that no "*reversible* error" occurred where peremptory challenges were used outside the presence of the defendant because the defendant had been given the opportunity to confer with counsel beforehand and counsel communicated the defendant's considerations to the trial court. (Emphasis added.) *Spears*, 169 Ill. App. 3d at 483. Specifically, the court stated:

   "[T]he record in the instant case fails to indicate that defendant's interests or substantial rights were violated or that he was prejudiced in any way by his absence during the communications between the trial court and counsel regarding prospective jurors. ***

      We note that under different circumstances, such as where a defendant was unable to communicate to counsel or the court his comments regarding prospective jurors, the defendant's right to be present at a critical stage of trial would be violated. Such a procedure would result in *reversible* error entitling the defendant to a new trial. In the instant case, however, *defendant's right to be present was protected*." (Emphases added.) *Id.*

¶ 88    The above reasoning clearly does not support the lead opinion's bright-line/*per se* rule that a defendant does not have a right to be present at the striking and accepting of jurors. Instead, *Spears* stands for the proposition that a defendant should in fact be physically present during the striking and accepting stage of jury selection. If the defendant is not physically present, as was the case in *Spears*, the reviewing court should then look to the record to examine whether the defendant suffered prejudice as a result of his absence.

¶ 89    Here, counsel was deficient, as there was no possible strategic advantage to infringing on defendant's broad right to be present during jury selection. This court should make this affirmative finding and then accept defendant's concession that prejudice cannot be proven on direct appeal. Such an analysis is consistent with the analysis found in *Bean* and *Spears*. Both courts ultimately reviewed the record and determined that the infringement of the respective defendants' right to be present during jury selection did not rise to the level of "*plain* error" (emphasis added) (*Bean*, 137 Ill. 2d at 81) or "*reversible* error" (emphasis added) (*Spears*, 169 Ill. App. 3d at 483). Neither *Bean* nor *Spears* supports the conclusion that a defendant simply does not have a right to be present at the striking and accepting of jurors. In fact, the reasoning and analysis found in both cases stand for the exact opposite proposition.

¶ 90    The defendant in *Beacham* alleged he was denied effective assistance of counsel where his counsel retired to the judge's chambers to exercise challenges. *Beacham*, 189 Ill. App. 3d at 491. Curiously, the *Beacham* court did not consider the question of whether counsel's actions constituted deficient performance. Instead, the court implicitly found lack of prejudice due to the fact that "the record indicate[d] *** that [the defendant] was present during the *voir dire* and was able to consult with his attorney before the exercise of challenges in chambers." *Id.* at 491-92. The *Beacham* court specifically noted that the defendant even "was allowed to reverse his counsel's acceptance of a panel of jurors." *Id.* at 492. *Beacham*, like *Bean* and *Spears*, does not stand for the lead opinion's bright-line/*per se* rule that a defendant does not have the right to be present during the striking and accepting of jurors.

¶ 91    The lead opinion's reliance on *Gentry* is misplaced, as the defendant in that case waived his "right" to be present during the exercise of certain challenges. *Gentry*, 351 Ill. App. 3d at 882-83. Initially, I would note the fact that defendant expressly

- 27 -

waived the "right" to be present during the exercise of challenges supports the conclusion that a "right" to be present actually exists. It must also be noted that the *Gentry* court, unlike the lead opinion here, expressly refers to the striking and accepting of jurors as part of *voir dire*. I only note this additional point due to the fact that the lead opinion takes great lengths to segregate the jury selection process into two distinct stages: (a) the questioning of prospective jurors, which it defines as "*voir dire*," and (b) the subsequent "striking and accepting of jurors" after the conclusion of *voir dire*. *Supra* ¶ 24.

¶ 92      Turning to the specific facts in *Gentry*, the trial judge and counsel for both sides held two *in camera* meetings where challenges were exercised, and defense counsel moved for a mistrial. *Gentry*, 351 Ill. App. 3d at 882-83. The defendant was not present during these two *in camera* meetings, nor was he present for a subsequent sidebar conference between the judge and counsel for both sides. *Id.* at 876. More specifically, counsel informed the court that her client was " 'waiving his *right* to be [t]here' " with respect to the first *in camera* meeting. (Emphasis added.) *Id.* at 882. The following colloquy took place with respect to the second *in camera* meeting:

> " '[THE COURT]: [D]oes your client want to be with us? ***
>
> MS. GARRETT [(DEFENSE COUNSEL)]: No, Your Honor.
>
> THE COURT: Okay, and you have told him that he can be here if he wants to be?
>
> MS. GARRETT: Yes, Your Honor.' " *Id.* at 883.

After the two *in camera* meetings, the judge called a sidebar conference, in which the court granted defense counsel's request to dismiss two potential jurors for cause and defense counsel exercised a peremptory challenge. *Id.*

¶ 93      Clearly, the defendant waived his "right" to be present at the two *in camera* meetings, and therefore no error resulted from the defendant's absence.[1] With respect to the sidebar conference, the defendant complained that the trial judge

---

[1]The *Gentry* court did not address the question of waiver, but I believe waiver forecloses any argument the defendant may have with respect to the two *in camera* meetings.

never asked him if he wanted to attend. In rejecting this argument, the appellate court noted that "no venire members were questioned outside [the] defendant's presence." *Id.* at 884. Like the lead opinion here, the *Gentry* court proceeded to assume that the defendant and counsel consulted with one another with respect to challenges. Specifically, the court stated: "Presumably, defense counsel took into account any 'input' from defendant when she acted on his behalf during the *in camera* meetings and sidebar conference." *Id.*

¶ 94 Significantly, *Gentry* did not involve a claim of ineffective assistance. Therefore, unlike in *Gentry*, the initial question before this court focuses on counsel's conduct, not the trial judge's conduct. Stated another way, the question before this court is whether counsel provided deficient performance when she agreed to a process striking and accepting jurors off the record and outside defendant's presence. The question before the *Gentry* court was whether the trial judge committed reversible error by failing to ask the defendant if he wished to be present during a sidebar conference after the defendant expressly waived his presence on two prior occasions. As one can see, the issue in *Gentry*, and therefore the court's analysis, is distinguishable from the instant case. Even still, I find relevancy in the fact that the *Gentry* court did not simply hold that defendant had no right to be present at the sidebar conference. Instead, the *Gentry* court proceeded to engage in an implicit prejudice-type analysis when it assumed that counsel consulted with the defendant prior to the conference. Applying the lead opinion's analysis retroactively to *Gentry* would not even require such an assumption to be made. Why would the trial court have to ask the defendant if he wished to waive his presence at a sidebar conference or hearing at which he was not entitled to be present?

¶ 95 In *Oliver*, defense counsel waived the defendant's appearance during an *in camera* meeting where the parties exercised challenges. *Oliver*, 2012 IL App (1st) 102531, ¶ 5. The defendant subsequently filed a postconviction petition alleging ineffective assistance because he never gave his counsel permission to waive his appearance. *Id.* ¶ 12. While the *Oliver* court did not expressly address the question of deficiency, it did broadly hold that a defendant shows a "violation of his constitutional rights" when juror challenges are conducted in a defendant's absence. *Id.* ¶ 21. The court ultimately affirmed the dismissal, however, on the ground that the defendant failed to establish prejudice. *Id.* ¶ 23.

¶ 96     While the *Oliver* court correctly disposed of the defendant's ineffective assistance claim on the grounds that the defendant failed to establish prejudice (as the lead opinion should do in the instant case), I disagree with the *Oliver* court's conclusive holding that a defendant establishes a "constitutional violation" merely by showing that he was not present for a stage of jury selection. Like the lead opinion, the *Oliver* court clouds the initial question a court should answer when faced with a claim of ineffective assistance—did counsel's performance fall below an objective standard of reasonableness. See *People v. Jackson*, 2020 IL 124112 ¶ 90; *People v. Houston*, 226 Ill. 2d 135, 144 (2007). Counsel's performance will be deemed deficient if it falls below this objective standard. *Houston*, 226 Ill. 2d at 144. In such a situation, the court must then turn to the question of whether counsel's deficient performance prejudiced the defendant. *Id.* Had the defendant in *Oliver* or defendant in the instant case proven prejudice as a result of their respective counsel's deficient performance, then and only then would they have established a "constitutional violation." This conclusion is supported either expressly or implicitly by the underlying reasoning found in *Bean*, *Spears*, *Beacham*, and *Gentry*.

¶ 97     After a substantive review of *Bean*, *Spears*, *Beacham*, *Gentry*, and *Oliver*, two points are clear: (1) the lead opinion's holding does not actually align with any of the underlying reasoning found in the above authority, and (2) there is a need for this court to clarify the substantive analysis or structure a court must employ when confronted with an ineffective assistance claim concerning a defendant's lack of presence during jury selection.

¶ 98     First, the lead opinion stands alone in its creation of a bright-line/*per se* rule that a defendant does not have the right to be present during the striking and accepting of jurors. For reasons I have already discussed, this holding is not only logically flawed; it is also not supported by any of the underlying reasoning found in *Bean*, *Spears*, *Beacham*, *Gentry*, or *Oliver*. This court's analysis in *Bean* supports the opposite conclusion—that a defendant does in fact have the right to be present during jury selection (which I believe includes questioning, striking, and accepting) and that conducting these stages in the absence of a defendant is "improper" and will inevitably lead to *plain* error, violations of a defendant's fundamental right to a fair trial, and also ineffective assistance in certain instances.

¶ 99 I acknowledge the lead opinion's reliance on the singular sentence in *Spears* that "the communication by defense counsel to the court of the defense's specific objections regarding prospective jurors is not a critical stage of trial requiring defendant's presence." See *Spears*, 169 Ill. App. 3d at 483. This mere sentence, however, without context or analysis ignores the fact that the *Spears* court based this conclusion upon the finding that defendant was not "prejudiced" as a result of his absence. *Id.* Stated another way, the *Spears* court did not find the absence of error; it found the absence of "reversible error." *Id.*

¶ 100 Likewise, the courts in *Beacham*, *Gentry*, and *Oliver* all either expressly or implicitly found that the defendants' absence during stages of jury selection did not result in prejudice. The lead opinion in the instant case, however, takes an entirely novel approach in holding that it need not even address prejudice because defendant simply never had a right to be present for the striking and accepting of jurors. No cited case stands for such a proposition. Moreover, the lead opinion's novel holding prompts the question—if a defendant simply does not have a right to be present, why did the courts in *Bean*, *Spears*, *Beacham*, *Gentry*, and *Oliver* all find it necessary to examine the respective defendants' lack of presence under a prejudice-type analysis or through the application of presumptions? These questions lead me to my second observation—this court must clarify the substantive analysis or structure a court should employ when confronted with an ineffective assistance claim concerning a defendant's lack of presence during jury selection.

¶ 101 As I discussed above, the lead opinion's analysis conflates the two ineffective assistance prongs: (1) deficient performance and (2) prejudice. While this court has previously held that "[j]ury selection is a critical stage of trial" (*Bean*, 137 Ill. 2d at 84), the lead opinion fails to even examine the pertinent question with respect to whether counsel was deficient during jury selection—is there any possible strategic advantage that might have been gained by conducting the questioning of jurors in the presence of defendant and then counsel subsequently agreeing to a procedure whereby the striking and accepting of jurors is conducted off the record and outside the presence of defendant? The short answer to this question is no. The lead opinion's baseless assumption that defendant had the opportunity to "provide whatever input he desired to counsel before his attorney acted on his behalf at the sidebars" goes to the question of prejudice. See *supra* ¶ 25. I also note that the two cited cases that involved ineffective assistance claims (*Beacham* and *Oliver*) both

failed to even discuss whether counsel was deficient. Consequently, this court should take this opportunity to not only clarify the law regarding a defendant's right to be present during all stages of jury selection, but it should also clarify the proper analysis a court should follow in the future when confronted with ineffective assistance claims related to this issue. I fear the lead opinion's analysis further muddies these waters.

¶ 102    It is for these reasons that I find counsel was deficient in agreeing to a process whereby defendant was not present for a critical part of his trial. More specifically, counsel's agreement to such a procedure was improper and lacked any possible strategic advantage. This does not end the inquiry, however, as reversal is only warranted if counsel's deficient performance resulted in prejudice to defendant.

¶ 103    Defendant concedes that there is no evidence in this record that he was tried by a biased jury, *i.e.*, prejudice. Furthermore, it must be noted that this record is silent as to whether defendant talked with counsel about individual venire members prior to the sidebars or what conversations were had by counsel and the judge during the sidebars. Because a defendant's lack of presence does not automatically entitle him to relief (*Bean*, 137 Ill. 2d at 88; *Spears*, 169 Ill. App. 3d at 483; *Beacham*, 189 Ill. App. 3d at 491-92; *Gentry*, 351 Ill. App. 3d at 884; *Oliver*, 2012 IL App (1st) 102531, ¶ 5), it would be inappropriate to simply presume prejudice, as defendant requests. Instead, the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2010)) provides a defendant the opportunity to raise " 'constitutional questions which, by their nature, depend[ ] upon facts not found in the record.' " *People v. Cherry*, 2016 IL 118728, ¶ 33 (quoting *People v. Thomas*, 38 Ill. 2d 321, 324 (1967)). In *Cherry*, this court commented that claims of ineffective assistance of counsel are commonly raised in postconviction proceedings because they often require the presentation of evidence not contained in the record. *Id.* Defendant's ineffective assistance claim is more appropriate for postconviction review, where he can develop the record and present the trial court with evidence that *may* support a claim that he was not tried by an impartial jury.

¶ 104    JUSTICE HOLDER WHITE joins in this special concurrence.

¶ 105    JUSTICES CUNNINGHAM and ROCHFORD took no part in the consideration or decision of this case.